IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL P. AUSTIN,<br><br>Plaintiff,<br><br>vs.<br><br>GARY DIETZ, HOWARD G. WARREN, FERRINGTON EVANS, and WADE BUTTERFIELD,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br><br><br>Case No. 2:16-cv-459-DB<br><br>Judge Dee V. Benson |

Before the Court is Defendants' Motion to Dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. [Dkt.12]. A hearing was held before the Court on February 8, 2017. Plaintiff was represented by John Hancock. Defendants were represented by Gayle McKeachnie and Thomas Barton. Following oral argument, the Court took the matter under advisement. Based on the written and oral arguments of the parties and on the relevant facts and the law, the Court hereby grants Defendants' motion.

1

## BACKGROUND

This case concerns the boundary line between Plaintiff's property and Defendants' properties located within the exterior boundaries of the Unitah and Ouray Reservation ("the Reservation") near Neola in Duchesne County, Utah. Complaint ¶¶ 2, 6-10; Dkt. 12. All of the parties own their lands privately. Complaint at ¶ 2; *see* Ex. F at ¶ 9. None of the parties are members of the Ute Tribe.[1] *Id.* at ¶¶ 6-9. Plaintiff asserts that the north boundary of his land is 35 feet north of an existing fence. In 2010, he removed part of the existing fence and began construction of a new fence on land that Defendants assert is their property. Plaintiff filed this action seeking declaratory judgment as to the property line and asserting causes of action against Defendants for estoppel, trespass, conversion, and requesting punitive damages. *Id.* at pp. 8-13.

### Procedural History

Plaintiff first filed suit in 2011 in the Ute Tribal Court in Fort Duchesne, Utah. The case was dismissed without reaching the merits.[2] Complaint ¶¶ 20-28. Plaintiff filed again in 2012 in Tribal Court alleging claims for estoppel, declaratory judgment, trespass, quiet title and conversion. *See id.* at ¶ 29. Defendants moved to dismiss the case for lack of jurisdiction. *Id.* at ¶ 30; Ex. B to Dkt. 12. After briefing and oral argument, the Tribal Court ruled that it lacked jurisdiction over the conversion and trespass claims because they involve the "conduct of non-

---

[1] Plaintiff is a member of the Sioux Tribe. *Id.* at ¶ 2.

[2] Some of the parties in this suit have been involved in prior litigation regarding other boundary disputes on some of the land involved in this case. The prior litigation took place in Utah's Eighth Judicial District Court in Duchesne County, Utah and was appealed to and ruled on by the Utah Court of Appeals.

Indians on fee land." Ex. C-1 to Dkt. 12 at p. 4. The Tribal Court stated that it would have jurisdiction over the estoppel, declaratory judgment and quiet title causes of action if the property is located within its territorial jurisdiction. *Id.* The Tribal Court ordered further briefing from the parties to determine whether the property is within its jurisdiction under recent Tenth Circuit Court rulings. *Id.* After further briefing, Plaintiff made several attempts to encourage the Tribal Court to consider and rule on the territorial jurisdiction issue, to no avail. Plaintiff appealed the case to a three-judge Tribal Panel, which sent it back to the Tribal Court on the grounds that it had not yet been finally decided by the Tribal Court. *Id.* at ¶¶ 32-44; Ex. C-2 to Dkt. 12. Plaintiff filed a Petition for Writ of Mandamus with the Tenth Circuit Court of Appeals requesting an order compelling the Tribal Court to schedule a hearing for oral argument and proceed with consideration of the jurisdictional issue. Complaint at ¶¶ 47-48. The Court of Appeals denied the petition.[3]

Plaintiff filed his Complaint with this Court on May 31, 2016, claiming he has exhausted any remedies available to him in the Tribal Court. *Id.*; Dkt. 13. On September 13, 2016, Defendants Dietz and Evans filed a complaint in the Eighth Judicial District Court, Duschesne County seeking to restrain Plainitff's conduct and obtain damages and other relief. *See* Ex. G to Dkt. 12. That matter is currently pending.

By their motion, Defendants seek dismissal of this action asserting that the Court lacks subject-matter jurisdiction for two, independent reasons: (1) the land involved in the boundary dispute is not Indian Country; and (2) the parties are not Ute Tribe members.

---

[3] As of this date, the Tribal Court has not yet ruled on the territorial jurisdiction issue.

## ANALYSIS

When seeking dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Hold v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* See also *Muscogee (Creek) Nation v. Oklahoma Tax Com'n*, 611 F.3d 1222, 1227 (10th Cir. 2010).

### I. INDIAN COUNTRY

#### A. Historical Background

In the early 1800s, before the creation of what is now known as the Uintah and Ouray Indian Reservation, a national system emerged for the transfer of federal lands to private citizens. Ex. A to Dkt. 15. The 1820 Sale Act provided that individuals could purchase parcels of government-owned land for $1.25 per acre. Ex. B to Dkt. 15. In 1862, the Homestead Act was signed into law under which settler-farmers who resided on and improved parcels of land for at least five years could submit applications and file for deeds of title. The Homestead Act provided that homesteaders alternatively could commute this process and obtain title sooner by paying the $1.25 per acre under the Sale Act of 1820.

In 1864, Congress confirmed President Abraham Lincoln's reservation of approximately two million acres of land in the Territory of Utah for Indian settlement and created what is now known as the Uintah and Ouray Indian Reservation ("the Reservation"). *See generally, Hagen v. Utah*, 510 U.S. 399, 402-408 (1994); *Ute Indian Tribe v. Myton*, ___F.3d___, No. 15-4080, pp. 3-4, 2016 WL 4502057 (10th Cir. August 29, 2016); *Ute Indian Tribe v. State of Utah*, 716 F.2d 1298-1303-13 (10th Cir. 1983)("*Ute II*"). The Reservation was set apart for the settlement and occupation of the Indians in the territory.[4] At that time, title to land was not transferred to a tribe or to individual Indians; instead the Federal Government continued to own the land, reserve it from sale and hold it for the use and benefit of the Indians.

In a series of Acts passed beginning in 1902 through 1905, Congress diminished the lands that comprised the Reservation by establishing individual allotments for members of the Ute Tribe and allowing unallotted lands within the Reservation to be restored to the public domain and subject to ownership by non-Indians under Homestead and other federal laws. *Hagen*, 510 U.S. at 399.

In 1945, after four decades of the Reservation being opened to non-tribal settlement, large portions remained unclaimed. *Myton*, No. 15-4080 at p. 4. Congress passed the 1945 Order of Restoration, which restored to the Tribe much of the unallotted lands that had not passed into private hands. *Id.* (*citing* Indian Reorganization Act of 1934, ch. 576, 48 Stat. 984; Order of Restoration, 10 Fed. Reg. 12,409 (Oct. 2, 1945); *Ute II*, 716 F.2d at 1312-13).

Litigation has been ongoing for decades regarding the status and boundaries of the

---

[4]The present-day Ute Indian Tribe includes descendants of the Indians who settled there.

Reservation and which lands constitute "Indian country" for jurisdictional purposes. In 1985, in a case referred to as *Ute III*, the Tenth Circuit Court of Appeals held that all lands within the original boundaries of the Reservation as established in 1860 – even those that had been transferred to non-Indians between 1905 and 1945 – remained Indian country. *Ute Indian Tribe v. Utah*, 773 F.2d 1087 (10th Cir. 1985) (*en banc*), *cert. denied*, 479 U.S. 994 (1986).

Nine years later, the United States Supreme Court held, contrary to *Ute III*, that the Reservation had been diminished by the 1902-1905 Congressional Acts that allowed land to be acquired in fee by non-tribal members. Land that had been transferred to non-tribal members between 1905 and 1945 was no longer Indian country. *Hagen v. Utah*, 510 U.S. 399, 421-422 (1994).

In 1997, in a case known as *Ute V*, the Tenth Circuit addressed the inconsistency between *Ute III* and *Hagen*. *Ute Indian Tribe v. Utah*, 114 F.3d 1513 (10th Cir. 1997). The Court reiterated that the Federal Government and the Ute Tribe have civil and criminal jurisdiction over "Indian country." *Ute V*, 114 F.3d 1529. Citing 18 U.S.C. § 1151(c), the Court stated that "Indian country" includes "all Indian allotments, the Indian titles to which have not been extinguished . . . lands held in trust by the Federal Government . . . all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation." *Id.* at 1529. The Court explained that "lands that could have been but were not allotted to non-tribal members between 1905 and 1945, and that were instead restored to tribal status in 1945, remained Indian country." *Myton,* No. 15-4080, at p.9 (*citing Ute V* at 1528-31; *Ute VI*, 790 F.3d

6

at 1004). Significantly for this case, however, the Court stated that, in accordance with *Hagen*, "'lands that passed from [tribal] trust to fee status pursuant to non-Indian settlement' between 1905 and 1945 do *not* qualify as Indian country."[5] *Myton,* No. 15-4080 at p. 7 *(emphasis original)(quoting Ute V*, 114 F.3d at 1529, 1530).

### B. The Parties' Parcels

Plaintiff's and Defendants' lands are located in Lots 1 and 2 of Section 25 of Township 1 North, Range 2 West of the Uintah Special Meridian. *See* Ex. 1 to Dkt. 12. The evidence shows that the land owned by all of the parties in this matter was originally homesteaded, purchased and patented under Patent No. 264797 to Loren O. Johnson ("Johnson"), a non-Indian, in 1912.

On May 18, 1909, Johnson filed a Homestead Entry on the 164.25 acres located in Lots 1 and 2, and the West half of the Northeast quarter of Section 25 in Township 1 North, Range 2 West of the Uintah Special Meridian. *See* Ex. J to Dkt. 12. Johnson was issued receipt Number 155115. *Id.* On May 31, 1910, Johnson filed an Application to Commute the Proof. *Id.* On July 16, 1910, Commuting Proof was submitted. *See* Ex. J. On October 27, 1910, a certificate was issued by the land officer. *Id.* Patent No. 264797, dated May 9, 1912, was issued to Johnson covering the lands homesteaded and was entered in the land office records May 16, 1912. *Id.* The language of the Johnson Patent states that title was conveyed according to the 1820 Sale Act and Acts supplemental thereto. On June 4, 1912, the Patent was mailed to Johnson. *Id., see also* Ex. L. Patent No. 264797 was recorded on February 16, 1918 in the land records of Duchesne County, Utah. *See* Ex. L to Dkt. 12. There is no evidence that any of this land was ever allotted

---

[5]The Court thereby modified the *Ute III* holding to be in accord with *Hagen*.

Case 2:16-cv-00459-DB   Document 28   Filed 03/13/17   Page 8 of 10

to an Indian or that it passed into the hands of a Ute tribal member or the Ute Tribe itself.

Additionally, the Bureau of Indian Affairs Map indicates that the parcels in question are "land transferred by fee patent" and are "non-Indian country jurisdiction." *See* Exs. K & L. The Duchesne County interactive map also depicts that the land covered by the Johnson Patent is "non Indian country."

Plaintiff alleges that the land did not pass to Johnson under the 1902-1905 Homestead legislation, but pursuant to the Land Act of 1820. Regardless of which legislation the land was patented under, it does not change the fact that the land was passed to Johnson, a non-Indian, from tribal trust to fee status between 1905 and 1945.

It is settled law that land transferred to non-tribal members between 1905 and 1945, is not Indian country. *Myton*, No. 15-4080 at pp. 11-14 (*citing Ute V*, 114 F.3d at 1528, 1530; *Hagen*, 510 U.S. 399). The Court finds, based on the undisputed facts and the current Supreme Court and Tenth Circuit precedent, that all of the property involved in this case is private fee land that is not Indian country. The Court therefore lacks subject-matter jurisdiction to adjudicate the causes of action Plaintiff has alleged in his Complaint.

## II. NON-TRIBAL MEMBERS

In *Montana v. United States*, 450 U.S. 544 (1981), the Supreme Court held that the "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." *Montana* has come to stand for the general rule that,

absent specific Congressional approval, "Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: the first exception relates to nonmembers who enter consensual relationship with the tribe or its members; the second concerns activity that directly affects the tribe's political intengrity, economic security, health, or welfare." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997)(*citing Montana*, 450 U.S. 544). *See also, Atkinson Trading Col, Inc. v. Shirley et al.,* 532 U.S. 645, 654 (2001); *State of Nevada v. Hicks,* 533 U.S. 353 (2001); *MacArthur v. San Juan City,* 497 F.3d 1057, 1068 (10th Cir. 2007).

According to *Montana*'s general rule, the presumption is that the Ute Tribe lacks civil authority over non-member defendants, such as all of the Defendants in this case. Plaintiff has the burden of showing that his allegations meet one of the exceptions. Plaintiff has not attempted to make such a showing.

This boundary dispute on non-Indian country fee land held by non-tribal members does not concern the Ute Tribe's political integrity, economic security, health or welfare. Nor has any assertion been made that Defendants have consented to jurisdiction in the Tribal Court. Accordingly, the Court finds that because none of the parties are members of the Ute Tribe, and because Plaintiff has failed to assert that this case falls under any of the exceptions enumerated in *Montana*, the Court lacks jurisdiction over the claims in this case.

## CONCLUSION

Plaintiff's alleged causes of action are based on state law. Because the land involved in this dispute is not Indian country, and because none of the parties are members of the Ute Tribe, there is no basis for subject-matter jurisdiction before this Court. See 28 U.S.C. § 1331-32.

Defendants' Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED.

DATED this 13th day of March, 2017.

_____
Dee Benson
United States District Judge